UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
   JALIL ABDUR-RAHEEM,               :
                                           :
                     Plaintiff,     :
                                           :             13-CV-6315 (JPO)
       -v-                    :
                                           :        OPINION AND ORDER
   T. CAFFERY and ALBERT PRACK,   :
                                           :
                    Defendants.    :
-----------------------------------------------------------X

J. PAUL OETKEN, United States District Judge:

      Jalil Abdur-Raheem ("Abdur-Raheem"), proceeding *pro se* while incarcerated at a correctional facility in New York, alleges that Defendants Terry Caffery ("Caffery") and Albert Prack ("Prack") (collectively, "Defendants") deprived him of his constitutional rights in violation of 42 U.S.C. § 1983.  Specifically, Abdur-Raheem alleges violations of the Fourth, Eighth, and Fourteenth Amendments.  Defendants move to dismiss the complaint for failure to state a claim. For the reasons that follow, Defendants' motion is granted.

I.      **Background**

     A.     **Factual Background**[1]

      In January 2011, Abdur-Raheem was a prisoner at New York State's Green Haven Correctional Facility ("Green Haven"), and worked as a porter in the Family Reunion Program ("FRP"), where his duties included cleaning the FRP trailers.  (Dkt. No. 1 ("Compl."), Ex. A ("N.Y.S. Decision").)  Defendant Caffery was a Tier III hearing officer at Green Haven.

---

[1] The following facts, taken from the complaint and attached exhibits, are assumed true for the purpose of resolving the motion to dismiss.  *Goonewardena v. New York*, 475 F. Supp. 2d 310, 320 (S.D.N.Y. 2007).

(Compl. at 5.)  Defendant Prack was the Director of Special Housing/Inmate Disciplinary Program for the New York State Department of Corrections and Community Supervision ("DOCCS").  (*Id.* Ex. B.)

On January 27, 2011, Abdur-Raheem cleaned the trailer where one of his own FRP visits was to be held and brought a few personal items into the trailer.  (Compl. at 5; N.Y.S. Decision.) Soon thereafter, a corrections officer who worked in the FRP office noticed that two cartridges of film were missing from the office, and, after a search, discovered one cartridge hidden between the mattresses of the bed in the trailer in which Abdur-Raheem was to have his FRP visit. (N.Y.S. Decision.)  Abdur-Raheem was immediately placed in the Special Housing Unit, or "SHU."  (Compl. at 5.)

Abdur-Raheem was charged in a prison misbehavior report with smuggling, stealing, and violating FRP guidelines.  (N.Y.S. Decision.)  On February 14, 2011, he was found guilty of the charges following a Tier III disciplinary hearing before Defendant Caffery.  (*Id.*; Compl. at 5; Compl. Ex. B.)  Caffery sentenced Abdur-Raheem to six months in the S.H.U.  The punishment included loss of packages, commissary, and phone privileges for the full six-month period. (Compl. at 5.)  It appears from the complaint that Abdur-Raheem may have been released early on April 4, 2011.  (*Id.*)  In any event, Caffery's determination was affirmed on administrative appeal.  (N.Y.S. Decision.)

Abdur-Raheem subsequently initiated a proceeding in New York state court pursuant to CPLR Article 78, contending that his right to call witnesses had been infringed at the Tier III hearing when Caffery failed to make a personal inquiry concerning the reason Abdur-Raheem's witness refused to testify.  (N.Y.S. Decision.)  The witness, a fellow inmate, was the other porter in the FRP program who had access to the FRP trailers.  (*Id.*)  He had initially agreed to testify,

but later refused.  (*Id.*)  At the hearing, Caffery informed Abdur-Raheem of the inmate's refusal

to testify and indicated that two officers had spoken to the inmate about his refusal.  (*Id.*)  In

addition, Caffery gave Abdur-Raheem a copy of the inmate refusal form, which indicated that

the requested witness did not "have knowledge of any photos" and "did not want to be

involve[d]."  (*Id.*)

On September 13, 2012, the Appellate Division, Third Department annulled the

disciplinary determination.  (*Id.*)[2]  The court held that under New York law, Caffery was

required to conduct a "personal inquiry" into the witness's reason for refusing to testify "unless a

genuine reason for the refusal [was] apparent from the record and [Caffery] made a sufficient

inquiry into the facts surrounding the refusal to ascertain its authenticity."  (*Id.*)  The court held,

first, that the witness's desire not to be involved, as indicated on the inmate refusal form, was not

a legitimate basis for an inmate's refusal to testify, and second, that "[e]ven if the refusal form

were construed to contain a justifiable reason based upon a lack of knowledge," there was no

evidence that Caffery had spoken with the officers who obtained the refusal form to establish this

reason as authentic.  (*Id.*)  Therefore, Caffery's obligation to conduct a personal inquiry was not

excused by the refusal form.  (*Id.*)  The court concluded that Abdur-Raheem "was denied his

regulatory right to call witnesses," and the matter was "remitted for a new hearing."  (*Id.*)

On September 20, 2012, Prack sent a letter to Abdur-Raheem advising him "on behalf of

the Commissioner" that his prison disciplinary determination had been "reviewed and

administratively reversed," and that rehearing was "not warranted."  (Compl. Ex. B.)

Abdur-Raheem sues Caffery and Prack in their official and individual capacities under 42

U.S.C. § 1983.  He alleges that Caffery violated his Fourth, Eighth, and Fourteenth Amendment

---

[2] *Abdur-Raheem v. Prack*, 98 A.D.3d 1152 (N.Y. App. Div. 3d Dep't 2012).

rights when he failed to personally inquire as to why the witness refused to testify, and that Prack "unconstitutionally left [him] confined to S.H.U. from Jan[uary] 27, 2011, until April 4, 2011." (Compl. at 5.)  He seeks damages of $150 for each day in SHU, $.32 per hour for the wages he lost as a result of being held in SHU, and punitive damages of $2,500.  (*Id.* at 5-6.)[3]  Caffery and Prack move to dismiss the complaint for failure to state a claim.

### B.    Procedural History

The complaint was filed on July 8, 2013.  (Dkt. No. 1.)  On September 24, 2013, the Court *sua sponte* dismissed Abdur-Raheem's official-capacity claims against the Defendants on the ground that, as state agents, Caffery and Prack have Eleventh Amendment immunity from suit for damages in their official capacities.[4]  (Dkt. No. 7.)  On March 12, 2014, Defendants moved to dismiss the complaint.  (Dkt. No. 18.)  Abdur-Raheem subsequently received two extensions of time to respond to the Motion to Dismiss (Dkt. Nos. 22 & 25), after which he applied for the appointment of counsel (Dkt. No. 29).  The Court denied his application, but *sua sponte* granted him a third extension of time within which to respond to the Motion to Dismiss, to December 20, 2014.  (Dkt. No. 30.)  Abdur-Raheem failed to meet this deadline, and the Court warned him that the Motion would be considered unopposed if he did not deliver his opposition to prison authorities by February 1, 2015.  (Dkt. No. 31.)  The Motion to Dismiss remains unopposed.

## II.    Legal Standard

---

[3] Abdur-Raheem's favorable Article 78 determination does not foreclose this subsequent § 1983 action for damages, since damages are unavailable to compensate a party in an Article 78 proceeding for civil rights violations.  *Davidson v. Capuano,* 792 F.2d 275, 278-80 (2d Cir. 1986).

[4] Accordingly, this Opinion addresses only the claims against the Defendants in their individual capacities.

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted)).

In determining whether a plaintiff has pleaded facts sufficient to survive a motion to dismiss, a court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010). A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680 (alterations and internal quotation marks omitted).

In assessing the sufficiency of the complaint, a court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation marks omitted). "Integral" documents are those "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)

(quoting *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993)).  In order for a document to be "integral," however, a plaintiff must actually have relied on its terms and effect in drafting the complaint; mere possession or notice is not enough.  *Id.*

Finally, Abdur-Raheem's *pro se* complaint is subject to more lenient standards than a complaint filed by a represented party.  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *see also* Fed. Rule Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## III.    Discussion

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must "'show that [an] official, acting under color of state law, caused the deprivation of a federal right.'"  *Coon v. Town of Springfield, Vt.,* 404 F.3d 683, 686 (2d Cir. 2005) (quoting *Graham,* 473 U.S. at 166 (1985)).  There is no dispute here that Caffery and Prack, employees of the DOCCS, were acting under color of state law.  The parties dispute the second element, that is, whether Abdur-Raheem has stated a plausible claim that Caffery or Prack deprived him of a right guaranteed by the United States Constitution.  Abdur-Raheem alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights.

### A.    Fourth Amendment Claim Against Caffery

Abdur-Raheem merely lists "4th Amend[ment] violations" in the complaint as part of the list of claims against Caffery, without elaboration.  (Compl. at 5.)  He states no facts from which

the Court can infer the Fourth Amendment violations to which he refers.  Accordingly, this claim is dismissed.[5]

### B.    Eighth Amendment Claim Against Caffery

Abdur-Raheem alleges that his Eighth Amendment rights were violated when he was placed in the SHU.  (*Id.*)  "In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is 'objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities,' and (2) a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety."  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  A prison official has a culpable state of mind if he "participated directly in the alleged event, . . . learned of the inmate's complaint and failed to remedy it, . . . created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates."  *Id.*

Abdur-Raheem has not plausibly pleaded either of these elements.  As to his detention in the SHU, he states only that he lost his privileges with respect to receiving packages, the commissary, and phone calls.  Even assuming that Abdur-Raheem's SHU confinement lasted for the full six-month period, these allegations are not sufficient to give rise to an Eighth Amendment violation.  *See, e.g.*, *Dixon v. Goord*, 224 F. Supp. 2d 739, 748-49 (S.D.N.Y. 2002)

---

[5] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(holding that "allegations of having been cut off from the prison population, a computer program, religious services, legal research, medical showers and personal property, as well as limits on food access, and other normal incidents of SHU confinement," which lasted ten months, were "not violations of the Eighth Amendment").  And he makes no allegation as to Caffery's culpable state of mind in sentencing him to six months in the SHU.  Accordingly, Abdur-Raheem's Eighth Amendment claim is dismissed.[6]

### C.      Fourteenth Amendment Claim against Caffery

Abdur-Raheem's Fourteenth Amendment claim against Caffery is a procedural due process claim.  To state such a claim, Abdur-Raheem must allege that he has a protected liberty interest and that he was deprived of sufficient process to protect that interest. *See Sandin v. Conner,* 515 U.S. 472, 484 (1995).  Abdur-Raheem argues that Caffery deprived him of due process when he sentenced him to the SHU without inquiring into the requested witness's reason for refusing to testify at the Tier III hearing.  (Compl. at 5.)

*Liberty or Property Interest:* A prisoner's liberty interest is implicated by SHU confinement only if the confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*  Factors relevant to determining whether the plaintiff endured an "atypical and significant hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and

---

[6] The Court notes that there is no evidence that Abdur-Raheem exhausted his Eighth Amendment claim as required to bring a prison condition claim under § 1983.  *See* 42 U.S.C. § 1997e(a); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 729 (S.D.N.Y. 2002) (detailing New York state's three-step inmate grievance process available to prisoners to exhaust their administrative remedies).  The defense of failure to exhaust, however, is an affirmative defense; a defendant must prove its factual basis. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Caffery has made no effort to do so here.

"the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir. 1998).

"Although the Second Circuit has explicitly declined to create a 'bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights,' it has established 'guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed.'" *Zappulla v. Fischer*, No. 11 Civ. 6733 (JMF), 2013 WL 1387033, at *6 (S.D.N.Y. Apr. 5, 2013) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)). For example, "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64-65 (internal quotation marks omitted). Confinement of 305 days or more has been deemed to be an "atypical and a significant hardship." *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (quoting *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000)). In contrast, typical punitive segregation conditions imposed for 101 days or fewer "generally do not constitute 'atypical' conditions of confinement." *Id.* (quoting *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999)). However, "[i]n the absence of a detailed factual record, [the Second Circuit has] affirmed dismissal of due process claims only in cases where the period of time spent in [punitive segregation] was exceedingly short—less than . . . 30 days . . .—and there was no indication that the plaintiff endured unusual . . . conditions." *Palmer,* 364 F.3d at 65–66.

It is unclear from the complaint whether Abdur-Raheem spent 67 days or six months (180 days) in the SHU. Either way, he spent more than 30 days in the SHU, and therefore development of a detailed record of the SHU conditions he was subject to is advisable before the Court will dismiss this claim for failure to plead a protected liberty interest. The factual record

before the Court is far from detailed; Abdur-Raheem states only that the SHU sanction "included loss of packages, commissary, [and] phone privileges." (Compl. at 5.)  The Court will therefore not dismiss Abdur-Raheem's procedural due process claim on this ground.  Rather, the Court assumes without deciding that Abdur-Raheem's SHU confinement implicates a protected liberty interest, and asks whether he was given sufficient process.

*Process:*  "A prisoner may not properly be deprived of a cognizable liberty interest without due process of law." *Gaston*, 249 F.3d at 163.  Due process requires that a prisoner be provided, at minimum, with "advance written warning of the charges against him, the opportunity to call witnesses, and a written final decision on the hearing describing how the state reached its determination." *Odom v. Kerns*, No. 99 Civ. 10668 (KMK)(MHD), 2008 WL 2463890, at *9 (S.D.N.Y. June 18, 2008) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)); *see also Ponte v. Real,* 471 U.S. 491, 495 (1985) ("Chief among the due process minima outlined in *Wolff* was the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board.").  Abdur-Raheem challenges only the second of these requirements; he alleges that his right to call witnesses was infringed when Caffery failed to make a personal inquiry into Abdur-Raheem's witness's refusal to testify. (Compl. at 5.)

A prisoner does not have an absolute right to call witnesses on his behalf in a prison disciplinary proceeding.  An "unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff*, 418 U.S. at 566.  Accordingly, "[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators. . . .  [W]e must balance the inmate's interest . . .

against the needs of the prison, and some amount of flexibility and accommodation is required."
*Id.*  Some legitimate reasons for refusing a prisoner's request to call a witness include
"irrelevance, lack of necessity, [and] the hazards presented in individual cases."  *Odom*, 2008
WL 2463890, at *9 (quoting *Wolff*, 418 U.S. at 566) (internal quotation marks omitted).

"Clearly, if a witness will not testify if called, it cannot be a 'necessity' to call him.
[Therefore,] if a prison official . . . reasonably concludes that it would be futile to call a witness
to testify, his refusal to do so will not constitute a violation of the prisoner's constitutional
rights."  *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).  Courts in this and neighboring districts
have consistently held that a prison hearing officer's failure to call a fellow inmate who refuses
to testify does not violate due process.  *See Odom*, 2008 WL 2463890, at *10 ("A witness's
refusal to testify is a rational reason for denying Plaintiff's request to call witnesses."); *Jamison
v. Fischer*, No. 11 Civ. 4697 (RJS), 2013 WL 5231457, at *3 & n.4 (S.D.N.Y. July 11, 2013)
(holding that a hearing officer could have reasonably concluded that it would be futile to call
witnesses where those witnesses submitted witness refusal sheets, and that therefore the fact that
these witnesses were not made to testify did not deprive the plaintiff of due process); *Turner v.
Grant*, No. 98 Civ. 706A, 2000 WL 362032, at *5 (W.D.N.Y. Mar. 29, 2000) (holding that a
hearing officer did not violate the plaintiff's due process rights in failing to call a witness who
refused to testify); *Merced v. Moylan*, No. 9:05 Civ. 1426 (FJS/RFT), 2007 WL 3171800, at *9
(N.D.N.Y. Oct. 29, 2007) ("A failure to summon the testimony of a witness who has refused to
testify, in the absence of evidence that the refusal was linked to intimidation on the part of prison
officials, does not violate due process because calling a witness who refuses to speak upon
questioning would be futile.").

Moreover, "[t]here is no indication in Second Circuit or Supreme Court case law that a hearing officer must make an independent evaluation of the basis for the refusal to testify." *Greene v. Coughlin*, No. 93 Civ. 2805 (DLC), 1995 WL 60020, at *14 (S.D.N.Y. Feb. 10, 1995) (holding that a Tier III hearing officer does not violate a prisoner's due process rights when he fails to investigate the reasons for an inmate refusing to testify); *Jamison*, 2013 WL 5231457, at *3 (same); *Dumpson v. Rourke*, No. 96 Civ. 621 (RSP), 1997 WL 610652, at *1 (N.D.N.Y. Sept. 28, 2006) (same).  While failure to make such an independent evaluation violates state regulations, it does not violate the complaining prisoner's federal constitutional rights.  *See Martinez v. Minogue*, No. 9:06 Civ. 546, 2008 WL 4241746, at *5-6 (N.D.N.Y. Sept. 11, 2008).

To be sure, a prison official who refuses to call a requested witness has a constitutional obligation to explain to the prisoner-defendant why the witness was not allowed to testify. *Ponte*, 471 U.S. at 497; *Russell v. Selsky*, 35 F.3d 55, 58 (2d Cir. 1994).  The reasons need not be in writing, and may be provided at the disciplinary hearing itself or by presenting testimony in court when there is a later constitutional challenge to the hearing.  *Ponte*, 471 U.S. at 497.

Under this precedent, Caffery did not violate Abdur-Raheem's due process rights when he proceeded without the testimony of Abdur-Raheem's proposed witness.  That witness had indicated, by way of an inmate refusal form, that he would not testify.  Further, while Caffery may have had an obligation under New York law to further investigate the inmate's refusal to testify, he did not have an obligation under the Due Process Clause to do so.  Rather, he was constitutionally required only to explain to Abdur-Raheem why the witness was not called.  Caffery fulfilled this obligation when he gave Abdur-Raheem a copy of the inmate refusal form at the Tier III hearing, which indicated that the inmate had refused to testify because he did not

have knowledge of the event and did not want to be involved.  Accordingly, Abdur-Raheem's

Fourteenth Amendment procedural due process claim against Caffery is dismissed.

> **D.    Claim Against Prack**

The complaint also names Prack, who was the Director of the DOCCS Special

Housing/Inmate Disciplinary Program when Abdur-Raheem was confined in the SHU.  (Compl.

at 5; *id.* Ex. B.)  The complaint alleges only that Prack left Abdur-Raheem "unconstitutionally . .

. confined to S.H.U. from Jan[uary] 27, 2011, until April 4, 2011." (*Id.* at 5.) [7]  Abdur-Raheem's

claim against Prack is best read as stemming from his claims against Caffery: because Caffery

unconstitutionally sentenced him to the SHU, Abdur-Raheem alleges, Prack's keeping him there

was unconstitutional as well. Accordingly, because Abdur-Raheem has failed to state a claim

against Caffery, he has failed to state a claim against Prack.[8]

---

[7] Although not pleaded in the complaint, the Defendants state that Prack was responsible for affirming Caffery's decision on administrative appeal, before it was reversed in the Article 78 proceeding.  (Dkt. No. 20 at 2.)  This is perhaps what Abdur-Raheem intends by his allegation that Prack left him "unconstitutionally . . . confined to S.H.U."  In any event, whether Prack passively left him in the SHU or affirmed Caffery's holding against him on administrative appeal, Abdur-Raheem has failed to state a claim against Prack.

[8] Abdur-Raheem's claim against Prack could also be liberally construed as faulting Prack for placing Abdur-Raheem in the SHU on January 27, 2011, 18 days before Abdur-Raheem was given any kind of hearing.  This claim fails.  Absent any indication that Abdur-Raheem endured unusual prison conditions, 18 days in the SHU is insufficient to allege interference with a liberty interest such that the protections of procedural due process apply.  *See Palmer,* 364 F.3d at 65-66; *see also Arce v. Walker,* 139 F.3d 329, 335-37 (2d Cir. 1998) (18 days in SHU).

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss the complaint is GRANTED.

The Clerk of Court is directed to close the motion at docket number 18 and to close the case.


SO ORDERED.

_____
J. PAUL OETKEN
United States District Judge


Dated: February 17, 2015
New York, New York


A copy of this Opinion and Order was mailed to the *pro se* party.

14